J-S64044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.L-J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.H. | |
| Appellant | No. 1021 WDA 2014 |

Appeal from the Order Entered May 27, 2014
In the Court of Common Pleas of Erie County
Civil Division at No(s): 13006-2009

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED OCTOBER 31, 2014**

Appellant, S.H. ("Mother"), appeals from the order entered in the Erie County Court of Common Pleas, which denied her petition for relocation with S.H. ("Child"), who is the child of Mother and Appellee, M.L-J. ("Father"). We affirm.

The trial court opinion sets forth the relevant facts and procedural history of this appeal as follows.

> Pursuant to an agreement of the parties, the [c]ourt, on November 24, 2009, entered an [o]rder of [c]ourt granting Mother and Father shared legal and physical custody of [Child].  In accordance with the 2009 [o]rder, [Child] resided primarily with Mother while Father exercised custody one overnight each week, all day every Saturday and additional time on holidays.  This is the arrangement the parties have followed since [Child] was just weeks old. Although Father has missed periods of custody, the parties have successfully worked together to switch days in order to allow Father consistent periods of custody.  Father has

regularly exercised custody of [Child] at least twice per week since her birth.

Mother, on December 24, 2013, married [Husband]. [Husband] is in the Marine Corps, which he joined on June 10, 2013. [Husband], who is from Erie, went to boot camp in South Carolina, was moved to North Carolina and then moved to Fort Leonard Wood in Missouri. In February or March of 2014, [Husband] was moved to Bolling Air Force Base in Washington, D.C. for three years.

In the beginning of 2014, Mother served a [r]elocation [n]otice on Father indicating her intent to relocate with [Child] to Fort Belvoir, Virginia. The [r]elocation [n]otice listed as "reasons for relocation" "Husband enlisted in Marines and is stationed at Fort Belvoir, V.A. Will allow [Mother] and [Child] to live on base with husband and allow financial freedom and a stable routine for the family." Father, on March 13, 2014, filed a [c]ounter [a]ffidavit [r]egarding [r]elocation indicating that he objected to the relocation. On March 19, 2014, Mother filed a [p]etition for [r]elocation requesting a hearing.

[The c]ourt presided over a hearing in this matter on May 7, 2014. At the conclusion of Mother's testimony, it was clear that her testimony alone prevented her from meeting her burden of proving that relocation would serve [Child's] best interest. In this regard, the [c]ourt met with counsel for both parties in chambers, explained why it was clear to the [c]ourt that Mother could not meet her burden, and gave counsel the option as to whether or not to proceed. After consulting with Mother, counsel informed the [c]ourt that it was Mother's decision not to continue with the case. Accordingly, this [c]ourt issued its May 27, 2014 [o]rder denying Mother's [r]equest for [r]elocation. Thereafter, Mother hired new counsel, who filed the present appeal on her behalf.

(Trial Court Opinion, filed July 8, 2014, at 1-2). On June 25, 2014, Mother timely filed both a notice of appeal and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925.

Mother raises the following question for our review:

> WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION WHEN IT FAILED TO APPLY THE ANALYSIS REQUIRED FOR RELOCATION SET FORTH BY BOTH PENNSYLVANIA COURTS AND THE CHILD CUSTODY ACT BY FAILING TO SUFFICIENTLY DEVELOP THE RECORD WHEN IT DID NOT TAKE COMPLETE TESTIMONY FROM [MOTHER], NOR HEAR ANY TESTIMONY FROM EITHER [MOTHER'S] WITNESSES, [FATHER] OR [FATHER'S] WITNESSES PRIOR TO ITS ORDER DENYING [MOTHER'S] PETITION[?]

(Mother's Brief at 2).

Mother argues the trial court truncated the proceedings and precluded the entirety of the testimony at the relocation hearing. Mother avers the court did not sufficiently develop the record or apply the analysis required for relocation before denying her petition. Mother concludes she is entitled to a new relocation hearing. We disagree.

Initially, we observe:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> ***A.D. v. M.A.B.,*** 989 A.2d 32, 35–36 (Pa.Super. 2010)

(citations and quotation marks omitted).

***S.J.S. v. M.J.S.***, 76 A.3d 541, 547-48 (Pa.Super. 2013).  Additionally,

> Our Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011.  ***See*** 23 Pa.C.S.A. §§ 5321–5340.  The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law.  23 Pa.C.S.A. § 5321.  In ***E.D. v. M.P.,*** 33 A.3d 73, 76 (Pa.Super. 2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a *filing* made after the effective date of the Act.

***Id.***  Further, Section 5337 sets forth the procedures governing relocation as follows:

> **§ 5337.  Relocation**
>
> **(a)  Applicability.**—This section applies to any proposed relocation.
>
> **(b)  General rule.**—No relocation shall occur unless:
>
> > (1)  every individual who has custody rights to the child consents to the proposed relocation; or
> >
> > (2)  the court approves the proposed relocation.
>
> **(c)  Notice.**—
>
> > (1) The party proposing the relocation shall notify every other individual who has custody rights to the child.
> >
> > (2) Notice, sent by certified mail, return receipt requested, shall be given no later than:
> >
> > > (i)  the 60th day before the date of the proposed relocation; or
> > >
> > > (ii) the tenth day after the date that the individual knows of the relocation, if:

(A)   the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60–day notice; and

(B)   it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i)   The address of the intended new residence.

(ii)   The mailing address, if not the same as the address of the intended new residence.

(iii)   Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv)   The home telephone number of the intended new residence, if available.

(v)   The name of the new school district and school.

(vi)   The date of the proposed relocation.

(vii)   The reasons for the proposed relocation.

(viii)  A proposal for a revised custody schedule.

(ix)   Any other information which the party proposing the relocation deems appropriate.

(x)   A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi)   A warning to the nonrelocating party that if the

nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

**(d)   Objection to proposed relocation.**—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation.   The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not.   If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form…

23 Pa.C.S.A. § 5337(a)–(d); **C.M.K. v. K.E.M.**, 45 A.3d 417, 422-25

(Pa.Super. 2012).  Regarding relocation factors:

Chapter 53 of the Domestic Relations Act, which we will refer to as the Custody Act, requires that when making a custody award, "[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order."  23 Pa.C.S.A. § 5323(d).  This Court has previously interpreted this mandate as requiring a trial court to state the reasons for its custody decision prior to the filing of an appeal.  **M.P. v. M.P.,** 54 A.3d 950, 956 (Pa.Super. 2012).

**M.J.M. v. M.L.G.**, 63 A.3d 331, 335 (Pa.Super. 2013), *appeal denied,* 620

Pa. 710, 68 A.3d 909 (2013).

With respect to a custody order, Section 5328(a) provides:

**§ 5328.  Factors to consider when awarding custody**

**(a)   Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3)   The parental duties performed by each party on behalf of the child.

(4)   The need for stability and continuity in the child's education, family life and community life.

(5)   The availability of extended family.

(6)   The child's sibling relationships.

(7)   The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)   The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)   Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a); **M.J.M., supra**. Moreover,

[T]he party proposing relocation…bears the burden of proving relocation will serve the children's best interests. **See** 23 Pa.C.S.A. § 5337(i). Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. 5337(i)(2).

**S.J.S. v. M.J.S.**, 76 A.3d 541, 551 (Pa.Super. 2013).

Further:

"Failure to timely object to a basic and fundamental error… will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The [principal] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error." (citations omitted); **Smith v. Smith**,

637 A.2d 622, 626 ([Pa.Super.] 1993) ("Appellant's failure to object to the court's noncompliance with the procedural [requirements] constituted a waiver of his [issue on appeal]").

***M.O. v. J.T.R.***, 85 A.3d 1058, 1061 (Pa.Super. 2014).

Instantly, the trial court reasoned as follows:

Considering that Mother, after consulting with counsel, decided to discontinue the proceeding, Mother's allegations of error are without merit. Specifically, Mother had an opportunity to proceed with her case, yet, without raising any objections to [the c]ourt, decided not to put any further evidence on the record. Mother [cannot] now fault the [c]ourt for her own decision. ***See*** [***id.***] The [c]ourt did not place its reasons on the record as the parties agreed not to continue with the case. Nevertheless, the following are the [c]ourt's reasons for determining that Mother was unable to meet her burden of proving that relocation was in the best interest of the Child.

\*     \*     \*

1. **Child's Relationship with the Parties and Other Significant Persons**

Mother's testimony and evidence indicate [Child] has a good relationship with [Husband], who has been in [Child's] life since she was approximately eighteen months old. It is clear, however, that [Child] also has a close and loving relationship with Mother, Father and many extended family members, all of whom, with the exception of [Husband], reside in the Erie area. [Child] is close to her maternal great-grandparents, her maternal grandmother and Mother's cousin, all of whom have provided childcare for [Child] while Mother work[ed]. Along with Mother, [Child] even resided with Mother's cousin for an extended period of time and currently resides with her maternal great-grandmother. Moreover, [Child] regularly spends time with Father, her paternal grandmother, including overnights, and her paternal aunt. Mother testified that [Child's] relationship with Father, as well as her paternal

and maternal relatives is close and that they have been regularly involved in [Child's] life since her birth.

In that regard, Mother's own evidence revealed that [Child] has many significant longstanding relationships in the Erie area which form her support network. Upon relocation, however, [Child] would have only [Husband] and Mother. While [Child's] relationships with Mother and [Husband] are not insignificant, the significant relationships that [Child] maintains in Erie, by far, outnumber the quality relationships that [Child] would have upon relocation. In other words, if relocated, [Child] would lose the ability to have close at hand the persistent support and routine contact which she has always known with a large number of very important people in her life.

**2. Age, Developmental Stage, Child's Needs and Likely Impact that Relocation will have on [Child's] Development**

Mother testified that [Child] is excited about and loves the house where she would live upon relocation. The [c]ourt can certainly understand that an almost five-year-old would be excited about a home which provides her with her own bedroom, particularly since she has been sharing a home and bedroom with extended family members. Nevertheless, [Child] would be leaving Erie, the only environment she has ever known, and all of her relatives, to begin a life in an unfamiliar environment with only Mother and [Husband]. Meanwhile, Mother admits that the new bonds which [Child] forms will be temporary as the family will be living on a military base, which is inherently temporary for each family in residence. Moreover, the move is temporary for [Child]. If relocation were allowed, it would only be for three years. In three years, it is Mother's intention that the family return to Erie. In this regard, [Child] will be uprooted from the only environment she has ever known and her strong network of extended family to be placed in a new environment where she will make temporary friends only to be uprooted again.

With regard to [Child's] educational development, it is noteworthy that [Child] has not yet started her formal education. [Child] will start kindergarten in the fall of

2014. Although Mother indicated that the school [Child] would attend in the event of relocation is Janney Elementary, she did not provide any evidence to indicate how the intended school is any more conducive to [Child's] educational development than any school [Child] would attend in the Erie area. Of even greater significance to the [c]ourt, [Child] would only attend Janney Elementary until second grade when Mother intends to return her to the Erie area.

For these reasons, the [c]ourt believes that the inherent instability of the move is likely to have a negative impact on [Child's] educational and emotional development.

### 3. Feasibility of Preserving the Relationship between Nonrelocating parent and [Child]

Mother proposed that, upon relocation, Father exercise three weeks of custody in the summer and every third weekend during the school year and that she would be flexible with a different arrangement. The distance between Washington, D.C. and Erie is approximately 300 miles or an estimated five and one-half hour drive. There are certainly arrangements that can be made to allow a relationship between Father and [Child]. The [c]ourt is concerned, however, that the distance and financial circumstances of the parties will cause Father and [Child's] relationship to become more distant, rather than preserve the relationship that they developed and continue to form through the regular contact enjoyed during this young child's formative years. Mother testified that Father has a good relationship with [Child], that he has been involved in [Child's] life, and that he has continuously exercised custody of her twice each week since her birth. Although Mother testified that the time she proposes will actually give Father the same or more time with [Child], the frequency of time will be so significantly disrupted that the [c]ourt is concerned that the quality of the relationship with this young child will not be sufficiently maintained.

Meanwhile, Mother reports that she needs to move because she is struggling financially and the move will lighten the burden. If Mother was struggling in Erie while she had an approximately $40,000 per year job and was

sharing living expenses with family, and she is moving to an area where she has no job, the [c]ourt can't help but believe that finances are going to be a real issue with regard to transporting the Child back and forth frequently enough to allow Father and Child to truly preserve their relationship.

In this regard, while it is certainly possible to establish an arrangement to allow contact between Father and [Child], the [c]ourt is concerned about the feasibility of an arrangement that will truly preserve this young child's relationship with her Father.

**4. Conduct of Either Party to Promote or Thwart the Other Party's Relationship with the Child**

There is not an established pattern of conduct by either party to promote or thwart the relationship of [Child] with the other party. To the contrary, it is clear that the parties are able to work together, even coordinating extra periods of custody for Father and his family and substituting days when a scheduled period of custody needs to be rescheduled. In this regard, the [c]ourt does not doubt that the parties are fully capable of working together regardless of the distance between their residences.

**5. Likelihood that Relocation will enhance Mother's General Quality of Life**

It is clear that Mother's primary reason for relocation is to be with her husband during the time that he will be stationed in Washington, D.C. If there was any other clear benefit, she would not be planning for this to be a temporary move with a return to Erie. Obviously, there is an emotional benefit to Mother from being able to live with her husband. Moreover, there are clearly benefits associated with the family being able to live together in a rent-free residence where [Child] will have her own bedroom. Aside from these benefits, Mother testified that relocating will improve her situation financially because she will be residing in military provided housing and she would no longer even have to pay utilities. Mother believes that this will allow her to enroll [Child] in dance classes again, to refrain from working initially, which will provide the

benefit of giving her more time with [Child], and allow her to work on obtaining an advanced degree via online classes.

The [c]ourt fails to see, however, how moving to Washington[, D.C.] will improve Mother's financial situation. Neither Mother nor [Husband] have any credit card debt. Mother's only bills at present are a car lease, car insurance and a cell phone bill. [Husband's] expenses only include a $300 student loan payment and a cell phone bill. Mother does not have any housing expenses in Erie as she is currently residing with her grandmother and, prior to that, Mother's cousin was living with her and helping pay the housing related bills.

Until her resignation in March of 2014, Mother worked as a registered nurse for UPMC Hamot, an occupation that she held since September 11, 2012. She worked full time with hours alternating between day shift and night shift. She made $19.65 per hour, or approximately $40,000 annually. Mother does not have a job upon relocation and has not seriously looked for employment.

The [c]ourt fails to see how Mother will gain financial stability for herself and the family by taking on additional college debt and failing to obtain employment. This simply is not an improvement from her situation in Erie of no housing expenses (with only shared liability for such expenses prior to her present situation) and a $40,000 annual salary which she would have maintained but for her rash decision to quit in order to move. Furthermore, Mother does not even know [Husband's] income, indicating that she has not truly calculated the true costs of this "great financial stability" she believes the family gains through her quitting her job and moving.

Moreover, Mother will be leaving behind a well-established family support network for temporary friendships which she is just beginning to establish.

The [c]ourt in no way wishes to downplay the emotional benefit to Mother of being able to reside with her husband. It is, however, apparent that her desire to live with [Husband] has clouded her judgment with regard to the

reality of what exactly the move means for her and [Child].

## 6. Likelihood that Relocation will enhance [Child's] General Quality of Life

Mother believes that [Child's] life will be enhanced because Mother will be able to afford dance classes for [Child], [Child] will have her own bedroom and a fenced-in backyard, and Mother will be able to spend more time with [Child] because they will be more financially stable eliminating Mother's need to work initially.

As discussed above, the [c]ourt fails to see how the move is going to be a financial benefit. Mother believes that she won't have to work initially and will only eventually need to return to work part-time. Furthermore, she plans to enroll in online classes to further her own education. Aside from the fact that Mother's own testimony indicates that she shouldn't be able to afford not to work or to enroll in college courses, the [c]ourt fails to see how Mother will be able to spend more time with [Child] while enrolled in a college program and working part-time as compared to having a full time job.

Furthermore, although Mother indicates that she has done research about the area and the school system, there is no evidence to indicate that the move provides an enhanced educational opportunity for [Child] or any greater atmosphere than the one in which she lives. To the contrary, relocation would result in moving [Child] away from the only environment she has ever known and her well-established support network. Meanwhile, the contacts Mother has made with other military families for herself and [Child] are, as Mother admits, tentative considering the mobility of military families.

Moreover, when Mother worked while living in Erie, [Child's] relatives provided childcare whereas there is no indication of who will provide childcare in Washington, D.C. once Mother does obtain employment.

In sum, the benefits to [Child] of taking dance class and having her own room are outweighed by the detriments.

Moreover, as discussed above, the [c]ourt simply does not believe that the financial benefits that Mother contends will inure from the move can possibly come to fruition.

**7. Reasons of Each Party for Seeking, or Opposing Relocation**

Mother's actions cause the [c]ourt to hesitate with regard to her motives. Specifically, it is troubling that, prior to the custody relocation trial, Mother quit her job, signed over her lease, reneged on her agreement with Father not to mention moving to [Child], and moved the family's large items to D.C. Nevertheless, considering the [parties'] ability to work together, as well as Mother's testimony that she is not seeking to relocate in any attempt to take [Child] away from Father and his family, the [c]ourt concludes that [Mother] is merely anxious to begin her life with her new husband.

With regard to Father, the [c]ourt did not find it necessary to question the integrity of his motives as Mother presented no evidence to indicate that he had ill will in his opposition and it was clear that Mother could not meet her burden of proving that relocation was in [Child's] best interest.

(Trial Court Opinion at 3, 5-12). In effect, the court considered the best interest factors articulated in Section 5328(a) and **M.J.M., supra**. The court found Mother could not meet her burden to establish relocation would serve Child's best interest. Therefore, we see no reason to disturb the court's decision to deny Mother's petition for relocation, particularly where Mother chose to end the proceedings ahead of time. Accordingly, we affirm.

Order affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2014</u>